UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Yamasaki Korea Architects, Inc.,
a foreign corporation,

    Plaintiff/Counter-Defendant,

v.                                                                       Case No. 08-10342

Yamasaki Associates, Inc., a Michigan          Honorable Sean F. Cox
corporation, *et al.*,

    Defendants/Counter-Plaintiffs.
_____/

## OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION TO COMPEL ARBITRATION
## AND STAY REMAINING CLAIMS

This case involves a dispute over architectural services provided on several different projects. The matter is currently before the Court on Defendants/Counter-Plaintiffs' "Motion to Compel Arbitration and Stay Remaining Claims." The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decisional process. *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion will be decided upon the briefs. For the reasons below, the Court shall grant the motion in part and deny it in part. The Court shall grant the motion to the extent that the Court shall compel the parties to arbitrate all claims relating to the Qatar Convention Project because it is undisputed that the contract governing that project has an arbitration provision requiring the parties to arbitrate all claims relating to that project and because Defendants have not waived their right to arbitrate those claims. The Court shall deny

1

the motion in that the Court denies Defendants' request that the Court stay the remaining claims in this action.

BACKGROUND

On January 23, 2008, Plaintiff Yamasaki Korea Architects, Inc. ("Plaintiff") filed this action against the following Defendants: 1) Yamasaki Associates, Inc.; 2) Yamasaki International, Inc.; 3) Ted Ayoub ("Ayoub"); and 4) Robert Szantner ("Szantner")(collectively "Defendants"). Plaintiff's complaint asserts the following claims:

- "Count I – Breach of Contract – Qatar Convention Project," wherein Plaintiff alleges that Plaintiff and Defendants entered into a contract regarding the Qatar Convention Project and that Defendants breached that contract by failing to pay Plaintiff for services rendered on that project.

- "Count II - Breach of Contract – IBQ Project," wherein Plaintiff alleges that Plaintiff and Defendants entered into a contract regarding the IBQ Project and that Defendants breached that contract by failing to pay Plaintiff for services rendered on that project.

- "Count III – Breach of Contract – Lusail Project," wherein Plaintiff alleges that Plaintiff and Defendants entered into a contract regarding the Lusail Project and that Defendants breached that contract by failing to pay Plaintiff for services rendered on that project.

- "Count IV – Account Stated," wherein Plaintiff alleges that it sent statements to Defendants for services rendered on the above projects, that Defendants did not object to the statements, and that Defendants are indebted to Plaintiff for the amounts specified in the complaint.

- "Count V – Fraud Based on Bad-Faith Promises," wherein Plaintiff alleges that Defendants defrauded it by making promises of future conduct with respect to the payment on a timely basis for services rendered to Defendants.

- "Count VI – Silent Fraud," wherein Plaintiff alleges that Defendants defrauded it by making promises of future conduct with respect to payment on a timely basis for services rendered to Defendants.

Defendants filed their Answer and Affirmative Defenses to Plaintiff's Complaint on February 28, 2008. Paragraph 59 of Plaintiff's complaint alleges that Defendants are in

2

possession of the contract pertaining to the Qatar Convention Project. In answering that paragraph, Defendants denied that they had a copy of that contract in their possession. Defendants' affirmative defenses, asserted on February 28, 2008, include: 1) that "Plaintiff has failed to attach the written contracts upon which Plaintiff relies;" and 2) "Plaintiff's claims are subject to an arbitration clause contained in the contract between Plaintiff and Yamasaki Associates, Inc." (Defs.' Answer & Affirmative Defenses at 21-22).

On February 28, 2008, Defendants also filed "Defendants'/Counter-Plaintiffs' Counterclaim and Demand for Trial By Jury," wherein they asserted the following counterclaims against Plaintiff:

- "Breach of Contract" (Count I), wherein Defendants assert they had an agreement with Plaintiffs that included "a variety of projects," and that Plaintiff breached the agreement.

- "Breach of License Agreement and Declaratory Relief" (Count II), wherein Defendants assert that they own the name "Yamasaki" and that Plaintiffs have breached a licensing agreement between the parties pertaining to the use of that name.

- "Unjust Enrichment" (Count III), wherein Defendants assert that Plaintiffs received and were benefited by services from Defendants but have not paid for same.

- "Implied Contract / Promissory Estoppel" (Count IV), wherein Defendants assert that Plaintiff made representations and promises relating to payment for services that they relied on, to their detriment.

The Counter-complaint does not contain any references, with respect to any of the counterclaims, to the Qatar Convention Project.

On March 14, 2008, this Court held a Scheduling Conference with the parties. Defendants claim, and Plaintiff does not dispute, that during that conference, Defense Counsel disclosed to the Court that Defendants: 1) did not have a copy of the signed contract relating to the Qatar Convention Project; 2) believed that Plaintiff's agent had removed Defendants' copy

3

from its files; and 3) believed the contract contained a valid, enforceable arbitration clause. (Defs.' Motion at 2).

Defendants claim that "[d]uring the course of discovery on or around May 19, 2008," Plaintiff produced the May 25, 2006 contract between the parties. (Defs.' Motion at 2). The May 25, 2006 contract between the parties, that relates to the Qatar Convention Project, is attached to Defendants' motion as Exhibit A. It is undisputed that the May 25, 2006 contract contains an arbitration provision, under which, both parties agreed that "[a]ny controversy, claim or dispute . . . arising out of or relating to" the contract "shall be resolved by binding arbitration." (*Id*. at 10).

On August 6, 2008, Defendants filed the instant "Motion to Compel Arbitration of Plaintiff's Claims That Are Subject To An Enforceable Arbitration Agreement And To Stay Remaining Claims." (Docket Entry No. 18).

On September 18, 2008, Plaintiff filed an untimely Response Brief in opposition to the pending motion. On October 14, 2008, Defendants filed an untimely Reply Brief.

In their motion, Defendants assert that all claims relating to the Qatar Convention Project are subject to arbitration. Defendants concede that the claims relating to the IBQ and Lusail projects are not subject to an arbitration provision but nevertheless assert that all remaining claims in this action should be stayed pursuant to 9 U.S.C. § 3. For its position that the Court should stay the remaining claims, Defendants rely on non-binding decisions from outside of the Sixth Circuit: *China Union Lines, Ltd. v. American Marine Underwriters, Inc.*, 458 F.Supp. 132 (S.D. N.Y. 1978); and *S.A. Mineracao Da Trindade-Samitri v. Utah International, Inc*., 576 F.Supp. 566 (1984).

4

Defendants' brief anticipates that Plaintiff will take the position that Defendants waived their right to arbitrate and attempts to refute that argument. Citing *Grebovic v. Great American Lines, Inc.*, 2007 WL 1012821 (E.D. Mich. 2007), Defendants note that the "party arguing there has been a waiver of his right bears a heavy burden of proof" and "must demonstrate knowledge of an existing right to compel arbitration, acts inconsistent with the right to arbitrate, and prejudice resulting from the inconsistent acts." Defendants contend that Plaintiff cannot make such a showing here.

In response to Defendants' motion, Plaintiff asserts that Defendants waived their right to arbitrate claims dealing with the Qatar Convention Project in this case because, with knowledge of the arbitration provision, they filed counterclaims in this action and engaged in discovery in this case.

## ANALYSIS

The pending motion presents two issues for the Court to determine: 1) whether the Court should compel the parties to arbitrate all claims relating to the Qatar Convention Project; and 2) if so, whether the Court should stay the remaining claims in this action.

A.  <u>Should The Court Compel The Parties To Arbitrate Claims Relating To The Qatar Convention Project?</u>

"Contractual arbitration provisions are treated like other contractual provisions and such agreements are enforced, unless the parties waive their right." *Gordon v. Dadante*, 2008 WL 4372951 (6th Cir. 2008). "A party may explicitly waive its right to arbitration, or may waive its right by failing to assert it or by participating in litigation to such an extent that its actions are '**completely inconsistent** with any reliance' on this right **and** cause the opposing party to suffer prejudice." *Id.* (quoting *Gen. Star Nat'l Ins. Co. v. Administration Asigurarilor de Stat*, 289 F.3d

434, 438 (6th Cir. 2002))(emphasis added). The Sixth Circuit has stated that a waiver of the right to arbitration is "not to be lightly inferred" and that the "strong presumption in favor of arbitration works against finding waiver in cases other than those with the most compelling fact patterns." *Gen. Star Nat'l Ins. Co., supra; JPD, Inc. V. Chronimed Holdings, Inc.,* 539 F.3d 388, 393 (6th Cir. 2008).

The Court rejects Plaintiff's waiver argument because in this case: 1) Defendants' actions have not been "completely inconsistent" with any reliance on the arbitration provision; and 2) Plaintiff has not shown any actual prejudice.

Courts have found that a party has acted completely inconsistent with reliance on an arbitration provision in situations where a defendant has remained idle for seventeen months during which time the plaintiff incurred significant litigation expenses. *Id.* Courts have also found that a party has acted completely inconsistent with reliance on an arbitration provision in situations where that party has chosen to litigate the arbitrable claims in court.

Here, however, Defendant raised the existence of the arbitration provision in the Qatar Convention Project at its earliest opportunity to do so. In their Answer to Plaintiff's complaint, Defendants denied that they had a copy of Qatar Convention Project in their possession. Defendants' affirmative defenses, asserted on February 28, 2008, include: 1) that "Plaintiff has failed to attach the written contracts upon which Plaintiff relies;" and 2) "Plaintiff's claims are subject to an arbitration clause contained in the contract between Plaintiff and Yamasaki Associates, Inc." (Defs.' Answer & Affirmative Defenses at 21-22). During the initial status conference on this case, Defendants advised the Court and opposing counsel that Defendants: 1) did not have a copy of the signed contract relating to the Qatar Convention Project; 2) believed

6

that Plaintiff's agent had removed Defendants' copy from its files; and 3) believed the contract contained a valid, enforceable arbitration clause. (Defs.' Motion at 2). Defendants filed the instant motion seeking to compel arbitration of the claims relating to the Qatar Convention Project within approximately two months after receiving a copy of the contract during discovery in this action.

In addition, although Defendants filed counterclaims in this action, they did not file any counterclaims that reference the Qatar Convention Project. It is undisputed that the parties had contracts relating to several projects, only one of which contains an arbitration provision. The counterclaim filed here makes no reference whatsoever to the Qatar Convention Project. Defendants may litigate claims relating to the other contracts, which do not have arbitration provisions, without waiving their right to arbitrate claims concerning the Qatar Convention Project.

Moreover, Plaintiff has not even alleged, much less established, that it has incurred any actual prejudice as a result of the very short delay in Defendants' bringing the instant motion to compel arbitration.

Accordingly, the Court concludes that Defendants have not waived their right to arbitrate and the Court will therefore compel the parties to arbitrate all claims relating to the Qatar Convention Project.

B.  Should The Court Stay The Remaining Claims In This Action?

Defendants acknowledge that the remaining claims in this action are not subject to an arbitration provision. Nevertheless, citing *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983), they note that in situations where a complaint presents both arbitrable and

non-arbitrable claims, the trial court has the discretion to stay the non-arbitrable claims pending arbitration as a matter of discretionary control of the court's docket. Defendants contend that the Court should exercise that discretion here and stay all remaining claims in this action pending arbitration of the claims relating to the Qatar Convention Project.

Having considered the parties' respective positions, the Court concludes that there is no reason why the non-arbitrable claims in this action should be stayed. The remaining claims are based on separate and distinct projects and do not require a resolution of the arbitrable claims before they can proceed. The Court therefore declines to stay the remaining claims.

## CONCLUSION & ORDER

For these reasons, IT IS ORDERED that Defendant's Motion is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED to the extent that the Court COMPELS the parties to arbitrate Plaintiff's breach of contract claim relating to the Qatar Convention Project (Count I of Plaintiff's Complaint) and, to the extent that they involve the Qatar Convention Project, also arbitrate those portions of Counts IV, V, and VI. The motion is DENIED with respect to Defendants' request that the Court stay the remaining claims in this action.

IT IS SO ORDERED.


Dated: November 17, 2008	S/ Sean F. Cox
	Sean F. Cox
	United States District Court Judge


**PROOF OF SERVICE**

The undersigned certifies that the foregoing order was served upon counsel of record via the Court's

8

ECF System and/or U. S. Mail on November 17, 2008.

                                              s/Jennifer Hernandez
                                              Case Manager to
                                              U. S. District Judge Sean F. Cox